UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TERRANCE DONALD**, | ) | Case No. 1:06 CV 2018 |
| | ) | |
| Petitioner, | ) | Judge Sara Lioi |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **DAVID BOBBY, WARDEN**, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Terrance Donald was convicted in Cuyahoga County Common Pleas Court for aggravated murder and aggravated robbery with firearm specification involving the victim, Lamar Brooks, and was sentenced to serve 23 years in prison.  See Application, p. 1, ECF #1; *State v. Donald*, 2004 WL 2914928, 2004 - Ohio - 6848 (Ohio App. 8 Dist.), *motion for appeal denied*, 105 Ohio St.3d 1562, 828 N.E.2d 117 (Table 2005);[1] and see Judgement Entry, Ex. 31.[2]

Donald has exhausted his state remedies regarding the five grounds he presents under 28 U.S.C. §2254 for federal habeas corpus relief claiming denial of compulsory process, denial of speedy trial, denial of effective assistance of counsel for failing to move to dismiss the case for want of speedy trial, denial of due process of law due to prosecutorial misconduct and insufficient evidence to support the conviction.

---

[1] This appeal consolidated issues raised both on direct appeal and in state post-conviction proceedings.

[2] Donald's original sentence was vacated and remanded on appeal for trial court error in failing to include a mandatory five year post-release control on record at the sentencing hearing.  *Donald*, 2004 WL 2914928, ¶¶ 55-59. On remand a supplemental sentencing hearing was held where there is a specific mention of the post-release control provision and Donald was resentenced on July 19, 2005.

2

*Standard of Review:*

Federal habeas corpus  is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct.1604, 140 L.Ed.2d 828 (1998), quoting *Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Under 28 U. S.C. §2254 Congress imposed constraints on the jurisdictional powers of review of state court adjudications of the merits.  As a result,  a petitioner must demonstrate that the state court's decision:  (1) "resulted in a decision that was contrary to"; (2) "or involved unreasonable application of"; (3) "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

Under the "contrary to" standard of review, "[a] state court's decision is 'contrary to' [] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts  that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza,* 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Under the "unreasonable application" standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). The unreasonable application of Supreme Court precedent must, however,  be "objectively" unreasonable.  *Williams,* 529 U.S. at 409, 120 S.Ct. at

1:06 CV 2018                                         3

1521; *Wiggins,* 539 U.S. at 520-21.  When the state court has rendered a decision, the federal

reviewing court  may not grant the writ in its "independent review of the legal question." *Lockyer*

*v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

> **GROUND ONE**: Mr. Donald was denied due process of law and trial by
> jury when he was not allowed to present the testimony of a material witness.

At issue is the argument for admission of Marquis Andrews' testimony at Donald's trial that

Marquis was present during a phone conversation between his brother Marcus Andrews and the

mother of another witness, James Marzett. It was proffered that when the conversation concluded

Marcus turned to Marquis and said that Marzett's mother was trying to pressure him to go and talk

to the police and tell them that Donald robbed Lamar Brooks.  See  *Memorandum in Support of*

*Jurisdiction*, pp. 5-6, Ex. 29,  ECF #14, and see Trial TR. 768-72.   It is important to note that

Donald attempted to use Marquis Andrews' testimony **after** Marcus Andrews had testified and  the

State had rested. Marquis Andrews was called as  the first defense witness.  See Trial TR. 766.

The state appellate court resolved this argument finding the testimony was hearsay, that

Marcus had already testified, and that it was immaterial:

> {¶ 27} WITNESS TESTIMONY
>
> {¶ 28} After conducting a voir dire of Marquis Andrews, the brother of
> Marcus Andrews, the judge determined his testimony about his brother being
> pressured to testify was hearsay and refused to allow it at trial. Donald claims
> he was prejudiced by this exclusion because it was instrumental in showing
> Marcus Andrews' bias in favor of the State.

{¶ 29} The substance of Marquis Andrews' testimony regarded an alleged phone conversation he overheard between his brother and Marzett's mother in which she pressured him to testify. Donald claims that, since this testimony related to Marcus Andrews' expressed concern over pressure from Mrs. Marzett to testify for the State against him,FN25 he was entitled to prove the bias via extrinsic evidence in the form of Marquis Andrews' testimony.FN26

FN25. Evid. R. 401.
FN26. Evid. R. 616.

{¶ 30} The State contends that the excluded testimony would have added little to the defense, and that Marcus Andrews' own testimony can explain his reluctance to testify, as he repeatedly expressed his dislike of the police, and told the jury that he is related to both Donald and Marzett.

{¶ 31} The decision to admit or exclude evidence at trial is a matter which lies within the sound discretion of the judge.FN27 Although Donald cites *U.S. v. Valenzuela-Bernal*,FN28 in an effort to prove that he is only required to demonstrate that such testimony would have assisted his defense to show a violation of due process, under *Valenzuela-Bernal*, he must make some showing that Marquis Andrews' testimony would have been both material and favorable to the defense,FN29 a showing that he cannot make, particularly in light of the fact that both purported parties to the call, Mrs. Marzett and Marcus Andrews, were both available to testify.

FN27. *State v. Hall* (April 26, 2001), Cuyahoga App.No. 77384; *Felden v. Ashland Chem. Co.* (1993), 91 Ohio App.3d 48, 59, 631 N.E.2d 689.
FN28. (1982), 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193.
FN29. *U.S. v. Valenzuela-Bernal*, 458 U.S. at 867.

{¶ 32} Further, the purpose of the defense in offering Marquis Andrews' testimony was to show that Mrs. Marzett pressured his brother to testify in a manner that was beneficial to her son. What Donald neglects to mention, however, is that Marcus Andrews had previously testified and not one question was asked of him regarding such a conversation. The judge properly rejected Marquis Andrews' testimony on hearsay grounds. When the source of the hearsay is available, there is no excuse for not asking him these same questions. This third assignment of error lacks merit.

*Donald,* 2004 WL 2914928 at ¶¶ 27-32.

1:06 CV 2018                                      5

Donald argues that this testimony was relevant under Ohio Evid. R. 401 because Marcus Andrews had felt pressure to testify against Donald and this testimony showed *bias* in the form of extrinsic evidence permissible under Ohio Evid. R. 616.  *Memorandum, supra*.  According to Donald, this demonstrates that the excluded testimony would have assisted his defense and this infringement constituted denial of the Sixth Amendment right of compulsory process under the standards set forth under *United States v. Valenzuela-Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

Donald maintains that the state court decision finding hearsay is in error because, first, the proffered evidence served to establish Marcus Andrews' state of mind, a permissible use of a declarant's testimony under Ohio Evid. R. 803(3),  and second, Marquis's testimony constitutes a present sense impression for purposes of Ohio Evid. R. 803(1).  *Memorandum.* at p. 6-7.  Based on this foundation he claims that Marquis Andrews' testimony about the Marcus Andrews--Mrs. Marzett telephone conversation was material because Marcus Andrews was the only key witness for the State who was not testifying as part of a plea agreement.  *Id.*, p. 8.  Based on this assumption of materiality, Donald further argues that pursuant to *United States v. Valenzuela-Bernal*, he has made a plausible showing of how this testimony would have been both material and favorable to his defense.

*Valenzuela-Bernal* struck down the Ninth Circuit's "conceivable benefit" test citing *Washington v. Texas*, 388 U.S. 14, 16, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967) to find that the more appropriate standard to adjudicate compulsory process claims under the Sixth Amendment

1:06 CV 2018                                          6

guarantees is that the defendant will not be "arbitrarily deprived of [testimony that] would have been *relevant* and *material* and . . . *vital* to the defense." *Valenzuela-Bernal*, 458 U.S. at 867, 102 S.Ct. at 3446. The Supreme Court, though, integrated its rationale with Fed. R. Crim. P. 17(b)'s requirement for defendant seeking subpoena to make a satisfactory showing that the presence of the witness was necessary to an adequate defense. *Id.*, 458 U.S. at 867 n. 7. On this foundation the Supreme Court held that the Sixth Amendment does not guarantee counsel the right to compel the attendance of "any and all witnesses"( *Id.* at 867, n. 7.), "but there must at least [be] some plausible showing of how [the witness'] testimony would have been both material and favorable to his defense." *Id.*, 458 U.S. at 867.

Donald does not challenge the court's findings that Marcus Andrews testified as the State's witness without being examined about this alleged conversation. See *Donald*, at ¶32. The only material purpose for Marquis Andrews' testimony has is to impeach Marcus as being pressured or threatened to testify to show *bias*. Donald, though, did not follow the standard rules of evidence in introducing this evidence. Both Donald and respondent have become fixated on hearsay rules in their arguments, in particular Ohio Evid. 803(3) and 803(1). [3] Donald has the idea that Marquis Andrews' statement concerning Marcus Andrews' declaration could be admitted as a present sense

---

[3] Evid. R. 803:
(1) Present sense impression.  A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
. . .
(3) Then existing, mental, emotional, or physical condition.  A statement of the defendant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

1:06 CV 2018                                  7

impression under Ohio Evid. R. 803(3).  The state rule, like its federal counterpart, does not allow

"a statement of memory or belief."  Accordingly, only the declarant's state of mind is admissible

and not the "circumstances surrounding why [declarant] had a certain state of mind."  *Daniels v.*

*Lafler*, 192 Fed. Appx. 408, 424 (6th Cir. unreported 2006); *United States v. Cohen*, 631 F.2d 1223

(5th Cir. 1980)(hearsay statement that declarant was threatened did not fall under Rule 803(3)'s

exception"; *United States v. Samantiego*, 345 F.3d 1280, 1283 (11th Cir 2003); *United States v.*

*Tome*, 61 F.3d 1446, 1454 (10th Cir. 1995).  This prohibition serves "to avoid the virtual destruction

of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay

statement, to serve as a basis for an inference of a happening of an event which would produce the

state of mind."  *Samantiego*, 345 F.3d at 1283, quoting Fed. R. Evid. 803(3) *Advisory Committee*

*Notes*.


        Donald's alternate hearsay exception theory is as a present sense impression under Ohio Evid.

R. 803(1). Ohio courts in comparison to their federal counterparts do not place a gloss over this rule

to require corroboration.  See *State v. Gordon*, 2001 WL 1142032, at *2, 2001 - Ohio - 1363 (Ohio

App. 9 Dist.), citing *State v. Wages*, 87 Ohio App.3d 780, 788 (1993); Compare 4 Saltzburg, Martin,

Capra, *Federal Rules of Evidence Manual*, p. 803-15 (8th Ed. 2002).  Accordingly, Marquis Andrews'

recollection of Marcus' statement was not hearsay but was a present sense impression hypothetically

admissible into evidence pursuant to Ohio Evid. R. 803(1) for the truth of the matter asserted.


        What Donald omits in the foregoing argument are two major considerations.  First, as alluded

in the state appellate court's decision, the purpose of  Marquis Andrews' testimony was not for

1:06 CV 2018                                    8

substantive evidence, but to demonstrate that Marcus' credibility was prejudiced.  Its relevance, as

Donald argues, stems from its use to show *bias*.  Second, hearsay rules are inapplicable for the use

of such evidence for impeachment to show *bias*. See 3 *Federal Rules of Evidence Manual* p. 607-15.

"This is because impeachment evidence is usually not offered for its truth, but rather for its bearing

upon the witness' credibility . . . .  See e.g. *United States v. Royal*, 972 F.2d 643 (5th Cir. 1992)

(evidence that a defense witness' mother tried to convince him to say that guns and drugs in the

defendant's house belonged to the witness and not the defendant was admissible over a hearsay

objection as relevant to the witness' bias.);" see also *United States v. Perez-Montenez*, 202 F.3d 434,

439 (1st Cir. 2000); *United States v. Williams*, 933 F2d 451, 457(5th Cir. 1993); *State v. Soke,* 105

Ohio App.3d 226, 238, 663 N.E.2d 986, 994 (Ohio App. 8 Dist.,1995).


        Donald has not laid a foundation for the admission of Marcus' declaration through Ohio Evid.

R. 613 and 616, which govern impeachment by self-contradiction.[4]  Ohio Evid. R. 613  requires

---

[4] **RULE 613.  Impeachment by Self-Contradiction**
(A) **Examining witness concerning prior statement.**  In examining a witness concerning a prior
statement made by the witness, whether written or not, the statement need not be shown nor its
contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to
opposing counsel.
(B) **Extrinsic evidence of prior inconsistent statement of witness.**  Extrinsic evidence of a prior
inconsistent statement by a witness is inadmissible if both of the following apply:
        (1) If the statement is offered solely for the purpose of impeaching the witness, the
        witness is afforded a prior opportunity to explain or deny the statement and opposite
        party is afforded an opportunity to interrogate the witness on the statement or the
        interests of justice otherwise require;
        (2) The subject matter of the statement is one of the following:
        (a) A fact that is of consequence to the determination of the action other than the credibility
        of a witness;
        (b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(A),
        616(B) or 706;
        (c) A fact that may be shown by extrinsic evidence under the common law of impeachment
        if not in conflict with the Rules of Evidence. . . .

1:06 CV 2018                                        9

inconsistent with the prior declaration according to Marquis Andrews, then Marcus would be

permitted "a prior opportunity to explain or deny this statement."   See *State v. Mack*, 73 Ohio St.3d

502, 514-515,  653 N.E.2d 329, 339 (1995), quoting  *State v. Theuring,*  46 Ohio App.3d 152, 155,

546 N.E.2d 436, 439 (Ohio App.,1988); *State v. Reed,*  155 Ohio App.3d 435, 442, 801 N.E.2d 862,

868 (Ohio App. 2 Dist.,2003). Ordinarily, extrinsic evidence of a prior inconsistent statement of a

witness is not admissible if the witness admits making the prior statement. *Reed*, 155 Ohio App.3d

at 44; *Blackford v. Kaplan* 135 Ohio St. 268, 270, 20 N.E.2d 522, 525 (1939). "If a witness denies

making the statement, a proper foundation has been laid, and [if] the evidence does not relate to a

collateral matter, extrinsic evidence is admissible." *State v. Riggins*, 35 Ohio App.3d 1, 3 (1986). On

the other hand, if the witness is not cross-examined specifically about the  inconsistent statement,

then there is no foundation for the introduction of this statement for impeachment.  *Mack*, 73 Ohio

St.3d at 515.

---

**RULE  616.  Methods of impeachment**
In addition to other methods, a witness may be impeached by any of the following methods:
(A) **Bias**   Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.
(B) **Sensory or mental defect**   A defect of capacity, ability, or opportunity to observe, remember, or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.
(C) **Specific contradiction**   Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
    (1) Permitted by Evid. R. 608(A), 609, 613, 616(A), 616(B), or 706;
    (2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence.

1:06 CV 2018                                  10

Additionally, there is a strong nexus between Ohio Evid. Rules 613(B) and 616.  Ohio Evid. R. 613(B)(2)(b) incorporates Ohio Evid. R. 616's methods of impeachment to allow specific contradiction for "bias, prejudice, interest, or any motive to misinterpret."  See Ohio Evid. R. 616(A) and 616(C).  It was under these rules that Donald could have properly sought admission of Marquis Andrew's testimony.  Thus it was improper to attempt to interject a contradictory statement attributed to Marcus Andrews, that he was biased due to threats, after the State had rested. [5]

Donald did not follow standard rules of evidence and now seeks to trump the trial court's ruling  with a Due Process claim despite clear law to the contrary that, "[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged or otherwise inadmissible under standard rules of evidence."  *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996); quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988).  The Supreme Court twenty years ago recognized in *Rock v. Arkansas*, , that, "the right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*,  483 U.S. 44, 55-56, 107 S.Ct. 2704, 2711,  97 L.Ed.2d 37 (1987), quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Among these legitimate interests in the criminal trial are the, "[n]umerous state procedural and evidentiary rules [that] control the presentation of evidence." *Rock*, 483 U.S. at 56 n.11, 107 S.Ct. at 2711 n.11, citing, *Chambers v. Mississippi*, 410 U.S., at 302, 93

---

[5] Ohio Evid. R. 404(B) which conceivably has some overlap would limit evidence of other crimes, wrongs or acts for the purpose of showing motive when the evidence is "inextricably related to the criminal act," which it is not. See 23 Ohio Rev. Code, Ohio Evid. R. 404(B) (Staff Note)(Lexis-Nexis 2005).  Further Ohio Evid. R. 608(B) states, "[s]pecific instances of conduct of a witness for purposes of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence."

1:06 CV 2018                                           11

S.Ct., at 1049; and, *Washington v. Texas*, 388 U.S. 14, 23, n. 21, 87 S.Ct. 1920, 1925, n. 21, 18

L.Ed.2d 1019 (1967).  Accordingly,

> States have substantial latitude under the Constitution to define rules for the
> exclusion of evidence and to apply those rules to criminal defendants. See
> *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413
> (1998). This authority, however, has constitutional limits. " 'Whether rooted
> directly in the Due Process Clause of the Fourteenth Amendment or in the
> Compulsory Process or Confrontation Clauses of the Sixth Amendment, the
> Constitution guarantees criminal defendants "a meaningful opportunity to
> present a complete defense." ' " *Holmes v. South Carolina*, 547 U.S. 319, ----,
> 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006) (quoting *Crane v. Kentucky*,
> 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), in turn quoting
> *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413
> (1984)). "This right is abridged by evidence rules that 'infring[e] upon a
> weighty interest of the accused' and are "arbitrary" or "disproportionate to the
> purposes they are designed to serve." ' " *Holmes, supra*, at ----, 126 S.Ct., at
> 1731 (quoting *Scheffer*, supra, at 308, 118 S.Ct. 1261, in turn quoting *Rock v.
> Arkansas*, 483 U.S. 44, 58, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). . . .***This
> is not to suggest all general rules on the exclusion of certain types of
> evidence are invalid. If the rule does not substantially burden the defense,
> then it is likely permissible***. See *Scheffer*, 523 U.S., at 316-317, 118 S.Ct.
> 1261.(emphasis supplied).

*Clark v. Arizona, -* U. S.*-,* 126 S.Ct. 2709, 2743-2744, 165 L.Ed.2d 842 (2006).

Donald has not shown that the state evidence rules substantially burdened his defense, and it

is apparent that the evidence could have been introduced had Donald specifically examined Marcus

Andrews about the statement attributed to him by Marquis Andrews, as required by the state rules and

their federal counterparts. Accordingly, Donald has failed to establish that the state court decision

affirming the denial of Donald's compulsory process clause claim on his failure to abide by standard

rules of evidence was "contrary to" or an objectively unreasonable application of clearly established

Federal law.

1:06 CV 2018                                    12

**GROUND TWO**: Mr. Donald was denied federal due process of law when he was brought to trial outside the statutory speedy trial deadline established by Ohio statute.

The state appellate court's decision contains an obvious flaw for it fails to address Donald's claim of denial of his Sixth Amendment right to a speedy trial. See *Donald* at ¶¶12-19. Respondent is correct that the state court identified the correct governing principle from the Supreme Court's decision insofar as the state appellate court cited *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). *Donald* at ¶13. In general, when the state court decision refers to the appropriate decisional basis from the Supreme Court, this is sufficient to trigger a presumption that the "state courts know and follow the law." *Woodford v. Fisciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002); *Holland v. Jackson*, 542 U.S. 649, 654, 124 S.Ct. 2736, 2739, 159 L.Ed.2d 693 (2004). However in this case, the state appellate court's decision discussed solely the state statutory time limitations. When the state appellate court does not respond to the federal constitutional arguments before it, the district court has no state court decision before it and must resolve the issue *de novo*. See *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006); *Moldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

In general, violations of Ohio's Speedy Trial Act (Ohio Rev. Code §§2945.71-2945-73) do not present a constitutional claim. See *Hutchison v. Marshall*, 744 F.2d 44, 45 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985). Ohio's Speedy Trial Act "has nothing to do with fairness of the trial

1:06 CV 2018                                        13

itself. . . [but rather] goes to the fairness of . . . extended pretrial detention." *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998); *Hutchison,* at 47. Comity requires deference to state court judgments on denials of state-law based speedy trial claims. *Hutchison*, at 46. [6]

Unlike the state speedy trial act, the Sixth Amendment constitutional right to speedy trial is not based on fixed time limitations but is a functional analysis based on balancing. *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972); *Solem v. Helm,* 463 U.S. 277, 294-95, 103 S.Ct. 3001, 3012, 77 L.Ed.2d 637 (1983). *Barker* identified four non-exclusive factors for this function analysis: length of delay; whether the government or the criminal defendant was more to blame for the delay; whether defendant asserted his right to speedy trial in due course; and whether the criminal defendant suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); and see *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001). The first factor of length of delay is the critical threshold. Delay must be sufficiently long to be 'presumptively prejudicial' before the remainder of the analysis undertaken." *Barker*, at 530. Generally, delay approaching one-year serves as a guidepost for the presumption of prejudice. See *Doggett*, 505 U.S. at 652 n. 1; *Wilson*, 250 F.2d at 394.

---

[6] Donald had argued that he was required to be tried within 90 days pursuant to Ohio Rev. Code §2945.71(E), the "triple count" provision which applies to the general 270 day felony time limit of §2945.71(C)(2) when defendant is in jail.

1:06 CV 2018                                      14

Respondent does not oppose Donald's claims that he was incarcerated following arrest on December 17, 2001 with trial originally scheduled for March 11, 2002.  Donald requested several continuances of pretrial proceedings during January and February 2002 but did not request a continuation of the trial date.  See *Donald* at ¶¶17-18.  The trial court rescheduled the trial for April 17, 2002, and on that date Donald signed a waiver of speedy trial through July 15, 2002.  The transcript discloses that the trial actually began on May 13, 2002 with jury *voir dire*.  (See Trial TR. ECF #11-19).  The time period between December 17, 2002 through May 12, 2002 calculates to 147 days,  nowhere near meeting the first *Barker* criterion of length of delay to trigger "the rest of the speedy trial analysis."  *Barker*, 407 U.S. at 530; *U.S. v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994).  More importantly Donald does not allege that his defense was prejudiced by delay.  Compare *Doggett*, 505 U.S. at 656, 112 S.Ct. at 2693.

Donald counters that the state statutory speedy trial rights create a liberty interest and since the State is constitutionally obligated under the principles of federal due process to provide procedural protections in this area, then the state's failure to bring him to trial within 90 days constitutes a denial of due process.  For this legal contention, Donald  tortures Justices O'Connor's and White's concurring and dissenting-in-part opinion in *Ford v. Wainwright* – a case which held that the Eighth Amendment contained a substantive right to prohibit the state from executing a prisoner while insane. *Id.*, 477 U.S. 399, 427-28, 106 S.Ct. 2595, 2611, 91 L.Ed.2d 335 (1996) (O'Connor, White, J.J., concurring and dissenting-in-part).  These justices wrote that Florida law served to create a state entitlement for a prisoner to avoid execution while insane referring to *Hewitt v. Helms*, 459 U.S. 460 (1976) and *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979).  *Id.*  Donald, however, omits

1:06 CV 2018                                    15

consideration from his argument that the Supreme Court later retracted from its position in *Hewitt* and criticized the methodology of *Greenholtz* in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Donald need not seek support for his argument so far removed from Sixth Amendment speedy trial issues.  The Sixth Circuit has also expressed similar concerns over Ohio's statutory speedy trial scheme in *Johnson v. Overberg*, 639 F.3d 326 (6th Cir. 1981), that the Ohio legislature created a liberty interest in trial within 90 days of arrest, and that the liberty interest could not be denied without due process of law.  *Id.*, at 327.

The Sixth Circuit has subsequently questioned the position it had  taken in *Johnson* in light of *Sandin v. Conner*.  See *Norris v. Schotten*, 146 F.3d at 329 & n. 13.[7]  However, unlike the Supreme Court's decision in *Ford,* which found an inadequate state review process in Florida, the Sixth Circuit in *Norris* found no reason to question the adequacy of the state review procedure in the Ohio courts, reasoning:

> Yet, even assuming that the state trial court acted arbitrarily and deviated from proper procedures in denying appellant's motion to discharge, any insufficiency in procedural due process was cured through the appellate review process that was available to appellant and which appellant took advantage of. See J.A. at 737 (Ohio Ct. of Appeals Op. at 9) (Ex. J).  In requesting federal federal habeas relief, appellant has not claimed and offers no proof that the Ohio court system as a whole is arbitrary and lacks a rational

---

[7]  Another reason to question the continued viability of *Johnson v. Overberg's* rationale is that this review is conducted under §2254(d)(1) as amended by the Anti-terrorism and Effective Death Penalty Act of 1996. Donald has not shown any "clearly established Federal Law, as determined by the Supreme Court of the United States" to establish any Supreme Court decisional model for review of state statutory speedy trial claims as matters of constitutional due process. This claim will be addressed despite its now dubious basis.

1:06 CV 2018                                              16

> mechanism/process for remedying errors.  Thus, we find appellant's due
> process argument to be unconvincing.

*Norris*, 146 F.3d at 329.

Donald has not shown that the state appellate procedure denied him the opportunity to present his claim or that the state appellate procedure was not a rational mechanism/process for remedying his alleged error. Consequently following *de novo* review of these unaddressed arguments, Donald has failed to establish a violation of his Sixth Amendment right to speedy trial and has failed to establish a denial of due process because he had an adequate state procedural mechanism to review his claim of denial of the state statutory speedy trial right.

> **GROUND THREE**: Mr. Donald was denied the effective assistance of
> counsel when his attorney failed to move to dismiss his case for want to speedy
> trial.

Donald argues that his trial counsel was ineffective by virtue of his failure to move to dismiss the case for want of speedy trial.  To sustain a violation of the constitutionally guaranteed Sixth Amendment right to counsel, Donald must first show that counsel's performance was deficient, so that counsel was not functioning as the "'counsel 'guaranteed the defendant by the Sixth Amendment,'" and secondly, Donald "must show that the deficient performance prejudiced the defense;" so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

1:06 CV 2018                              17

Unlike the second ground concerning the right to a speedy trial under the Sixth Amendment, the state appellate court noted *Strickland*, *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), and related state analogues in finding that counsel's performance could not meet the first prong of objective unreasonableness.  See *Donald* at ¶¶ 20-26. Accordingly, since the state decision acknowledged the correct factors for adjudicating this claim, Donald must show an "unreasonable application" of clearly established Federal law. See *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005);*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).   The unreasonable application of Supreme Court precedent must, however,  be "objectively" unreasonable.  *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins, supra*, at 520-21

The state appellate court reasoned that trial counsel was not ineffective because there was no denial of speedy trial and hence trial counsel's failure to move to dismiss under a state statutory ground did not deprive Donald to either due process or the Sixth Amendment right to effective assistance of counsel. Consequently, absent a showing that the state appellate court's decision was "objectively unreasonable" federal collateral review is "boxed in" on this point.

Donald attempts to circumvent this bar arguing that the state appellate court's resolution of the state statutory speedy trial claim was incorrect. It is well established that federal habeas corpus relief does not lie for errors of state law except in extraordinary situations where the error produced resulted in a fundamentally unfair trial.   See *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-5, 79 L.Ed.2d 29 (1984);

1:06 CV 2018                                          18

*Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991). Returning to the previous due process analysis, under *Norris v. Schotten* requires Donald to show that the state procedural mechanism was so seriously flawed that it could not provide a rational mechanism for resolving his due process claims. *Norris*, 146 F.3d at 329. Donald has not made this showing. Accordingly, Donald has failed to show that the state court's resolution of his ineffective assistance of counsel claim was "contrary to" or "an objectively unreasonable" application of clearly established Federal law as set forth in the decisions from the Supreme Court.

> **GROUND FOUR**: Mr. Donald was denied due process of law and the right to trial by jury by virtue of the prosecutor's improper remarks during closing argument.

"The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is 'whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Durr v. Mitchell*, 487 F.3d 423, 439 (6th Cir. 2007), quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974). This standard requires the petitioner to show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*; and see *Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). The judicial determination is to be made "in the context of the facts and circumstances of the case . . ." *Darden*, 477 U.S. at 183 n. 15. If conduct is found to be improper, four factors are then considered to determine flagrancy: "(1) the likelihood that the remarks of the prosecutor tended to mislead the

jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the

remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the

defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.) *cert. denied*, 546 U.S. 865 (2005); *Durr*, 487

F.3d at 439.


The state appellate court found no merit to this claim due to the lack of prejudice or deprivation

of a fair trial and included in its analysis review of the evidence of record.  The state appellate court

reasoned:

> {¶ 36} Donald claims that the prosecutor improperly expressed his personal
> belief in Donald's guilt, by stating during closing that he "would not rise to the
> bait * * * [that] I'm prosecuting an innocent guy * * * because I know I don't
> do that," and by claiming that Donald's police statement contained a number
> of lies. Closing arguments, however, are to be viewed in their entirety to
> determine whether the disputed remarks were prejudicial, and although Donald
> has supplied this court with an abbreviated version of the prosecutor's closing,
> the relevant portion quoted in its entirety states:
>
> {¶ 37} "Folks, I'm not going to rise to the bait that his obvious inexperiences
> has caused him to throw out. Telling you that, as the prosecutor I'm prosecuting
> an innocent guy, and I should know better basically and that detectives are
> building a case against an innocent guy, and should know better.
>
> {¶ 38} I'm not going to rise to that bait because I know I don't do that."
>
> {¶ 39} A review of this entire text shows that the prosecutor was not
> attempting to insert his personal belief, but rather it shows his response to
> Donald's prior insinuations. Moreover, Donald has failed to show how the
> prosecutor's commentary prejudiced him and deprived him of a fair trial.
>
> {¶40} Donald also objects to other closing statements: "[T]he defendant talked
> with the police, and he gave them a two-page written statement, signed it, and
> it contains a number of lies," and, when referring to Donald's actions after he
> was arrested, that he, "starts ostensibly cooperating with the police but he only
> cooperates to a certain extent, starts telling them lies about whose [sic] driving

> the car and a number of other factors, including he starts talking about James Marzett being the shooter."
>
> {¶ 41} Although the prosecution is entitled to a certain degree of latitude in closing statements and, although statements about Donald's veracity are questionable, the mere utterance of these statements does not rise to the level of material prejudice required by the Ohio Supreme Court.
>
> {¶ 42} In both instances, the prosecutor then outlined the inconsistencies in Donald's statements to police, pointing out that while the statement claims Marzett was driving, Marzett consistently claims that Brooks was driving the vehicle the entire night, a contention fully supported by Andrews. The prosecutor also points out that Donald's statement claims Marzett was the shooter, yet no one saw him with a gun either before, during, or after Brooks' death, and no evidence other than Donald's statement alleging Marzett's guilt was offered at trial.
>
> *Donald*, at ¶¶ 36-42

The state appellate court's decision does not cite U.S. Supreme Court cases. Nonetheless, a deferential standard of review applies which liberally states, "that a state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*).

The state court's analysis of the "rise to the bait" remark follows federal invited error analysis as set forth in *Darden*, 477 U.S. at 182, 106 S.Ct. at 2472, citing *United States v. Young*, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985). Under this format the court must examine the response "within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *Young,* 470 U.S. at 12; *United States, v. Cody*, 498 F.3d 582, 590 (6th Cir. 2007). Albeit brief, the state court decision referred to the "entire text" to find no assertion of personal belief

1:06 CV 2018                                21

and no prejudice to Donald. This decision was neither "contrary to" nor and objectively unreasonable application of Supreme Court precedent.

The state court decision showed more concern over the prosecutor's reference to Donald's police statement as "lies."  The state decision rested on the progression of the prosecutor's argument from accusatory to demonstrations of the inconsistencies of Donald's claims with the evidence from the trial.  Again this analysis tracks federal models. To illustrate with a similar incident occurring in federal court, the Sixth Circuit found no deprivation of a fair trial. See *United States v. Stover*, 474 U.S. 904 (6th Cir. 2007).[8]

There is, however, one topic of Donald's arguments which do not clearly appear in the state appellate court's decision, where Donald alleges person *ad hominem* disparagement of defense counsel. The first of these three alleged incidents concerns question asked in rehabilitating State's witness James Marzett (Trial TR. 548).  Donald claims that defense counsel was attacked for improperly placing words in Marzett's mouth.  However review of the question in context shows no misconduct by the prosecutor in rehabilitating Marzett's recollection concerning the fact that he had earlier not told police that Donald "smacked [Larmar Brooks] upside the head."  (Trial TR. 547).

---

[8] The decision explains: "The prosecution may imply that a defendant is lying during its closing argument so long as the prosecutor emphasizes discrepancies between the defendant's testimony and the record. *United States v. Owens*, 426 F.3d 800, 806 (6th Cir.2005), *cert. denied*, --- U.S. ----, 126 S.Ct. 1089, 163 L.Ed.2d 905 (2006). . . Although the prosecutor's remarks did more than this, it does not rise to the level of flagrancy. The difference between what the prosecutor actually said-"he is a liar"-and what the prosecutor could have permissibly said, that the evidence suggested that Defendant Hinton's testimony is not credible, is minimal. This statement does not require reversal under [*United States v.*] *Tocco* [ 200 F.3d 1420 (6th Cir. 2000)]."

*U.S. v. Stover*, 474 F.3d 904, 916 (6th Cir. 2007)

1:06 CV 2018                                        22

Marzett responded affirmatively to the question whether the words had been used by defense counsel. *Id.* The prosecution then asked Marzett, "Why did you let defendant's lawyer put words in your mouth about smacking upside the face?" Marzett responded that he did not want to argue with defense counsel at the trial and for the judge "to get mad at me." (Trial TR. 548). If it makes it appear that defense counsel was attempting to subvert the truth as Donald claims, there nonetheless was nothing improper about the question. The question did not attack defense counsel personally but served to present evidence for the reason for Marzett's "mistaken testimony." (Trial TR. 548-49).

Next Donald claims that the prosecution was improperly trying to claim that defense counsel was intimidating another state's witness, James Humphrey. These statements, however, did not show intimidation. The prosecutor in closing commented on the fact that Humphrey acted as an informant and "defense counsel went up and talked to him. And he's got some letters that Humphrey wrote after defense counsel talked to him." (TR. 815).  The prosecution argued that apparently it dawned on Humphrey that he might end up in jail with Donald, "so he writes a couple of letters trying to play both streets ---- both sides of the street at the same time so to speak." *Id.* 815-16. The prosecutor went on to say, "Defense counsel is going to stand up, probably read those letters to you but remember, those letters are written after the defense lawyer goes up and talks to him and calls certain things to his attention." (Trial TR. 816).

In context, the prosecutor's reference to defense counsel calling certain things to Humphrey's attention does not equate with intimidation. Humphrey did testify that after speaking with police he wrote Donald two letters which stated that his prior statements implicating Donald to the robbery and

1:06 CV 2018                                        23

killing were lies (Defendant's Exhibits B and C, Trial TR. 673).  These closing remarks merely called attention to the fact that the two letters written to exculpate Donald followed a meeting between Humphrey and defense counsel.  As for the circumstances surrounding the letters, the jury had an opportunity to hear this through Mr. Humphrey's testimony at trial.  Donald cannot show that the prosecutor's remark was in any way inaccurate or misleading insofar as it summarizes this incident.

Finally, Donald claims there was an *ad hominem* attack on defense counsel in the remark that counsel was trying to cause confusion where there was none.  (Trial TR. 844).  Contrary to Donald's claims there clearly was not an improper *ad hominem* disparagement of defense counsel.  The prosecution did not call defense counsel a "liar" as Donald argues nor personally question defense counsel's veracity. [9]  The prosecutor was simply pointing out the central theme of the State's case, and that the jurors should not become lost in extraneous matters.  In no way can this be misconduct. Accordingly, *de novo* of the last topic shows no reversible error due to prosecutorial misconduct, and with regard to the arguments reviewed by the state appellate court, the decision was neither "contrary to" nor and objectively unreasonable application of Supreme Court precedent.

---

[9] "What you have here is simply a case in which the defendant is being represented in court in a fashion to try and cause some confusion where there is non confusion and then trying to tell you you don't know what happened there that night because it's all confused.  Well, it's not all confused. First of all, throughout this trial, defense has made some issue, which I don't understand, about the fact that Marzett has pled guilty to a manslaughter.  He has admitted having a part in this crime.  He has criminal responsibility for his part in what happened to Lamar Brooks."

(Trial TR. 844).

1:06 CV 2018                                    24

**GROUND FIVE**: Mr. Donald was denied due process of law because the evidence
was insufficient to sustain a conviction of either charge.

The fifth ground is not a conventional sufficiency of the evidence claim under *Jackson v.
Virginia*, 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560 (1979).  Instead Donald raises three abstract
arguments contending that the evidence was insufficient to support conviction because: (1) there was
no eyewitness who actually saw Donald fire a shot at Lamar Brooks; (2) there was no evidence
whether these shots were fired accidentally or in self-defense; and (3) federal due process under the
Fourteenth Amendment requires the State to prove beyond a reasonable doubt that the killing was not
accidental and not in self-defense. Based on these abstractions presented in Donald's traverse and to
the Ohio Supreme Court, Donald has waived review of the evidence for sufficiency of proof of the
elements of the crimes he stands convicted.


Donald apparently does not understand the difference between direct and circumstantial
evidence and there is no constitutional prohibition against conviction with the use of circumstantial
evidence to be the sole support of criminal conviction. See *Desert Palace, Inc., v. Costa*, 539 U.S. 90,
100, 123 S.Ct. 2148, 2154, 156 L.Ed.2d 84 (2003), citing *Holland v. United States*, 348 U.S. 121, 140,
75 S.Ct. 127, 99 L.Ed.150 (1954).  Eyewitness testimony is not necessary in order to convict.  See
*United States v. Crenshaw*, 359 F.3d 977, 993 (8th Cir. 2004).  While not as directly on point, the Ohio
Supreme Court in *State v. Group*, 98 Ohio St.3d 248, 255, 781 N.E.2d 980, 1990 (2002), upheld
excusing a potential juror who insisted  the State must produce two eyewitnesses to sustain a vote for
conviction.

1:06 CV 2018                                    25

The next argument concerns the State's duty to negate self-defense.  The due process clause of the Fourteenth Amendment is violated when the person is convicted without "sufficient proof." *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  But in evaluating this proof, a federal court must look to state law to determine the elements of the crime.  *Id.*, 443 U.S. at 324 n. 16.  Ohio is one of those states where self-defense is an affirmative defense to murder and the Constitution does not require the prosecution to disprove self-defense beyond a reasonable doubt in order to convict a defendant.  See *Gilmore v. Taylor*, 508 U.S. 333, 359, 113 S.Ct. 2112, 2127, 124 L.Ed.2d 306 (1993), citing *Martin v. Ohio*, 480 U.S. 228, 233, 107 S.Ct. 1098, 1102, 94 L.Ed.2d 267 (1987).  To state it simply under Ohio's scheme, self-defense is outside an elements of the crime.  Accordingly, there is no due process violation when the defendant is required to prove by a preponderance of the evidence that the actions were taken in self-defense, because the State must still prove the elements of the crimes beyond a reasonable doubt.  *Martin*, 480 U.S. at 233-34; *Hill v. Mitchell*, 400 F.3d 308, 323 (6th Cir. 2005), *cert. denied*, 546 U.S. 1039 (2005).

Accident, on the other hand, is not an affirmative defense which must be established by a preponderance of the evidence.  See *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888, 890 (1973). As the Ohio Supreme Court explained:

> By raising the defense of accident, 'the defendant denies any intent * * *. He denies that he committed an unlawful act and says that the result is accidental. Evidence which he offers in his own behalf to establish such a defense constitutes a denial or contradiction of evidence offered by the prosecution to prove an intent to kill. As this court said in Jones v. State, supra, at pages 342 and 343, 38 N.E. at page 83, in which an accused also raised the defense of accidental shooting to a murder charge:

1:06 CV 2018                                    26

'* * * The intent or purpose, to kill, being an essential constituent of the offense, should be averred and proven. *Fouts v. State*, 8 Ohio St. 98; *Kain v. State*, Id., 306; *Hagen v. State*, 10 Ohio St. 459. This purpose, like every other material averment of the indictment, is put in issue by the plea of not guilty, and, to authorize a conviction must be proven beyond a reasonable doubt. Where the state has shown that the death was the result of design, purpose, or intent,-and these terms in this relation are synonymous,-then the notion of accident is necessarily excluded. That which is designedly or purposely accomplished cannot, in the very nature of things, be accidental. Therefore, when the plaintiff in error introduced evidence tending to prove that the gun was accidentally discharged, he was merely controverting the truth of the averment in the indictment that it was purposely discharged.

'This was not an affirmative defense * * *.

'* * * he set up no other defense than that the state had not established beyond a reasonable doubt the facts constituting the crime charged against him, one of which facts was an intent to kill. * * *'

The defense of accident or accidental homicide does not legally represent a 'justification for admitted conduct.' Like the defenses of alibi or entrapment, accident trial court's charge was erroneous, the jury with the elements of the offense and the burden imposed upon the state to establish the existence of those elements.(footnotes omitted).

*Poole,* 33 Ohio St.2d at 19-21.

Thus, the defense of accident is no more than a denial that the crime was committed.


Similar thinking was expressed in *Charlton v. Davis*, 439 F.3d 369 (7th Cir. 2006), where the Seventh Circuit found that the former withdrawn Indiana accident defense instructions were "mere surplusage" as demonstrated by the Indiana Judges' Association Committee finding of no conceivable situation in which the principles incorporated in the instructions on accident would not also be conveyed to the jury by the standard pattern charges on the elements of the crime. *Id.* at 373.

Donald is arguing that federal Due Process requires the State to prove beyond a reasonable doubt that the killing was not accidental. In effect because the defense of accident is no more that a denial of the crime, he argues that the State must disprove that defendant committed the crime. There is certainly no burden on the State to disprove its case, as Donald argues. As stated earlier, Due Process only requires the State to prove the elements of a crime beyond a reasonable doubt.

## *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Donald has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding. See 28 U.S.C. §2254(d)(1) and (2). Further *de novo* review of those claims that went unaddressed by the state court decision reveals no reversible error. Donald has not demonstrated any error resulting in denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. There has been no demonstrated need for an evidentiary hearing. It is recommended that Donald's application for habeas corpus be denied.

                                    s/James S. Gallas
                            United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time

1:06 CV 2018                                     28

WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: February 12, 2008